IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JODY ERSON                          :

                                        :

       v.                           :   Civil Action No. DKC 13-1625

                                          :

INTERNATIONAL SPECIAL
ATTRACTIONS, LTD.                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this negligence case is the motion to dismiss filed by Third Party Defendant Ryman Hospitality Properties, Inc. (ECF No. 19), and the motion for leave to file an amended complaint filed by Plaintiff Jody Erson (ECF No. 22). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Third Party Defendant's motion will be denied and Plaintiff's motion will be granted.

**I.   Background**

The following facts are either set forth in the complaint or third-party complaint (ECF Nos. 2 and 17), or evidenced by documents referenced or relied upon in the complaint.[1]

---

[1] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider such evidence where the plaintiff has notice of it, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,

Defendant International Special Attractions, Ltd. ("ISA"), an entity incorporated under the laws of Colorado with its principal place of business in California, operated a live entertainment event known as "Ice!" at the Gaylord National Resort and Convention Center within the National Harbor complex in Prince George's County, Maryland ("The Gaylord").   Third-Party Defendant Ryman Hospitality Properties, Inc., formerly known as Gaylord Entertainment, Inc. ("Ryman"), owns The Gaylord.   On or about November 19, 2011, Plaintiff, a resident of Minnesota, was invited to "Ice!" by Scott Meader, an employee of ISA.   Prior to showing Plaintiff the exhibit, Mr. Meader invited Plaintiff into ISA's administrative office, a trailer located adjacent to the exhibit.   While in the trailer, Mr. Meader gave Plaintiff a parka to wear while she was within the exhibit.   After Plaintiff put on the parka, Mr. Meader instructed her to exit through a specific door.   Plaintiff exited through that door and immediately fell a significant distance to the ground as the door was elevated and did not have stairs leading to the ground.   She suffered severe injuries. (ECF No. 2 ¶¶ 1-2).

---

367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n.1 (D.Md. 2009).   Here, the third-party complaint references and relies upon the contract between ISA and Ryman.

On March 21, 2013, Plaintiff filed a two-count complaint in the Circuit Court for Prince George's County, Maryland. Count I is a claim of negligence, claiming that ISA breached its duty of care, which proximately caused Plaintiff severe, painful, and permanent injuries. Count II is a claim for *respondeat superior* liability against ISA for the actions of Mr. Meader, its employee. Plaintiff demands judgment against Defendant in an amount in excess of $75,000. Defendant was served with the complaint on May 14, 2013. On June 3, 2013, it answered the complaint (ECF No. 5), and on June 5, 2013, it removed to this court, citing diversity jurisdiction, 31 U.S.C. § 1332 (ECF No. 1).

On September 6, 2013, Defendant/Third-Party Plaintiff ISA filed a third party complaint against Third-Party Defendant Ryman pursuant to Federal Rule of Civil Procedure 14(a). (ECF No. 17). ISA alleges that pursuant to a contract between Ryman and ISA, Ryman was responsible for providing ISA with a trailer to use as a temporary office ("the Agreement"). Ryman ordered and leased that trailer, supervised its delivery and set-up, and was responsible for all issues and maintenance. Plaintiff fell from the trailer.

The Agreement contains the following indemnity clause:

> [Ryman] agrees to indemnify, defend and hold harmless ISA, its subsidiaries, parent companies, affiliates, agents, consultants

and assigns and their respective agents, officers, employees, and directors ("ISA Affiliates"), from and against any and all losses, damages, liabilities, claims, demands, suits and expenses (including reasonable attorney's fees and expenses) that ISA and ISA Affiliates may incur or be liable for, without regard to the cause or causes thereof or their negligence or comparative negligence as a result of any claim, suit or proceeding made or brought against ISA or ISA Affiliates based upon, arising out of, or in connection with [Ryman's] actual or alleged breach of any of [Ryman's] duties, obligations, representations, or warranties hereunder, or [Ryman's] negligence, gross negligence, or willful misconduct in connection with an Attraction.

(ECF No. 19-1 ¶ 19(b)).[2]

ISA's complaint states three counts against Ryman: Common Law Indemnity, Contribution, and Contractual Indemnity. In short, ISA claims that if it is found liable to Plaintiff for damages, then Ryman is liable to ISA for some or all of those damages.

On October 2, 2013, Ryman filed a motion to dismiss for improper venue or, in the alternative, failure to state a claim. (ECF No. 19). ISA opposed on October 21, 2013 (ECF No. 21), to which Ryman replied on November 7, 2013 (ECF No. 27). On October 25, 2013, Plaintiff filed a motion to file an amended

---

[2] Ryman points out that the contract cited by ISA in its third-party complaint was outdated and attached the operative contract. ISA admitted its error and acknowledges the contract provided by Ryman as the operative contract. (*See* ECF No. 21, at 2 n.1).

complaint to add Ryman as a defendant and bring one count of negligence against it.  (ECF No. 22).  Ryman opposed on November 11, 2013 (ECF No. 28), to which Plaintiff replied on November 20, 2013 (ECF No. 29).

## II.  Analysis

### A.  Motion to Amend Complaint

Plaintiff seeks to amend her complaint to add Ryman as a defendant and bring one claim of negligence against it.  As the motion to amend was timely, it is governed by Rule 15(a).

Rule 15 provides that courts should "freely give leave [to amend a pleading] when justice so requires."  Fed.R.Civ.P. 15(a).  Therefore, the court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted); *Keller v. Prince George's Cnty.*, 923 F.2d 30, 33 (4th Cir. 1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile).  "An amendment is futile when the proposed amendment is clearly insufficient on its face, or if the amendment claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."  *El-Amin v. Blom*, No. CCB-

11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012).   Under the Rule 12(b)(6) standard, the court must take all well-pled allegations as true and construe them in the light most favorable to the Plaintiff.   *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).   A complaint need not contain detailed factual allegations, but if the plaintiff fails to allege enough facts to make the claim appear "plausible on its face," then the court must dismiss the complaint.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ryman argues that Plaintiff's proposed claim of negligence against Ryman is insufficient, as it fails to state a claim upon which relief may be granted.   Plaintiff's proposed amended complaint makes three factual allegations against Ryman: (1) Ryman operated The Gaylord; (2) prior to Plaintiff's injury, Ryman provided the trailer to ISA for use as an administrative office; and (3) Ryman was responsible for the trailer's delivery, set-up, and maintenance.   (ECF No. 22 ¶¶ 2-3).   In her proposed negligence count, Plaintiff claims that Ryman owed a duty to maintain the trailer in a safe and unhazardous condition but, despite this duty, such an unsafe and unhazardous condition existed that Ryman knew or should have known would cause injuries to the public.   Ryman breached this duty by failing to keep the trailer in a safe and unhazardous condition; failing to have stairs going down the elevated trailer; failing to provide

any warnings of the dangerous condition; and being careless, reckless, and negligent in regard to the maintenance of the trailer. Plaintiff alleges that this negligence caused her injuries. (ECF No. 22 ¶¶ 24-28).

Ryman's first argument is that Plaintiff has failed to establish that Ryman owed her a duty. Under Maryland law, a property owner's duty to an individual on his property is dependent upon the individual's status while on the property.

> Historically, in Maryland, four classifications have been recognized: invitee, licensee by invitation, bare licensee, and trespasser. [*Balt. Gas & Elec. v. Lane*, 338 Md. 34, 44 (1995)]. An invitee is a person "on the property for a purpose related to the possessor's business." *Id.* The possessor owes an invitee a duty of ordinary care to keep the possessor's property safe. *Id.* A licensee by invitation is a social guest to whom the "possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." *Id.* A bare licensee is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating "'new and undisclosed sources of danger without warning the licensee.'" *Wagner v. Doehring*, 315 Md. 97, 102 (1989) (*quoting Sherman v. Suburban Trust Co.*, 282 Md. 238, 242 (1978)). "Finally, a trespasser is one who intentionally and without consent or privilege enters another's property." *Id.* As for a trespasser, even one of tender years, no duty is owed except that the possessor may not willfully or wantonly

7

> injure or entrap the trespasser. *Murphy v.*
> *Balt. Gas & Elec.*, 290 Md. 186, 190 (1981).

*Balt. Gas & Elec. v. Flippo*, 348 Md. 680, 688–89 (1998).  Ryman argues that Plaintiff has not alleged that Ryman invited her into the trailer; it was Mr. Meader, ISA's employee, who invited her.  Therefore, Ryman asserts that, as to Ryman, Plaintiff is not a invitee or licensee by invitation and is, at best, a bare licensee.  Under Ryman's analysis, Ryman owed no duty to warn Plaintiff about an alleged hazardous condition or had no duty to warn her that Mr. Meader would negligently instruct her to exit the door.  Consequently, because she has failed to allege sufficiently a duty owed by Ryman to Plaintiff, Plaintiff's proposed amended complaint would be futile.

Plaintiff disagrees, arguing that she was an invitee of Ryman.  She points to the decision in *Murray v. Lane*, 51 Md.App. 597 (1982), as directly on point.  That case involved a restaurant that also rented out rooms on its second floor.  Mr. Holtz rented a room from defendant Lane.  The innkeeper testified that he verbally told all tenants that no women are allowed upstairs, but no signs to this effect were ever posted in the restaurant or inn.  Mr. Holtz called plaintiff and told her to meet him at the restaurant, but if he was not there, to walk up to his room.  Plaintiff arrived at the restaurant and, not seeing Mr. Holtz, walked up the stairs to Mr. Holtz's room.

While up on the second floor, she leaned on a wood railing that gave way, causing her to fall seventeen feet, sustaining severe injuries.   She brought a suit of negligence against the innkeeper.   A jury found in her favor, but the judge granted judgment notwithstanding the verdict, holding that the plaintiff was a mere licensee, to which the innkeeper owed no duty except to abstain from wilful or wanton misconduct or entrapment.  *Id.* at 598-601.

The Court of Special Appeals reversed, noting, in the first instance, that the plaintiff's status as an invitee or licensee does not necessarily depend upon any direct relationship with the innkeeper.   Her invitation to use the stairway came from Mr. Holtz; and if the plaintiff was an invitee or licensee of Mr. Holtz, she is to be regarded as the invitee of the innkeeper, even if the innkeeper was unaware of her presence.  *Id.* at 601. The court recognized that there is a distinction as to the landlord's responsibilities between those portions of the property leased for the exclusive use of a tenant – for which the landlord is not responsible – and those portions which are retained by the lessor for general use, such as common areas and hallways.   Furthermore, a landlord may, in his lease, restrict the tenant's authority to invite or permit third persons to use the common areas, and thus restrict his liability, but such clauses do not affect the lessor's liability to third persons

9

who are not parties to the contract or in privity with it.   *Id.*
at 604.   Applying these principles to the dispute before it, the
Court of Special Appeals ruled that because there was no
evidence that the plaintiff knew or reasonably should have known
of the innkeeper's policy on women visitors, and thus was
unaware that she was not authorized to go up to the second
floor, she cannot be regarded as anything other than Mr. Holtz's
social guest, and thereby a business invitee of the innkeeper.
This is the case even if Mr. Holtz had no authority to extend
such an invitation, considering plaintiff was unaware of the
restrictions on Mr. Holtz.   *Id.*

Here, Plaintiff contends that her situation is strikingly
similar to that in *Murray*, with ISA as the tenant and Ryman as
the landlord because ISA is on Ryman's property pursuant to an
agreement to stage the "Ice!" event.   Plaintiff's proposed
amended complaint states that Ryman was responsible for
providing the trailer where the incident happened and was
responsible for setting it up, which means that the trailer's
dangerous condition was within Ryman's control.   Because
Plaintiff was invited by Mr. Meader – an employee of tenant ISA
– she is also an invitee of Ryman in those areas under Ryman's
control, such as the trailer.

Plaintiff's arguments are convincing.   The *Murray* decision
has not been directly or impliedly overruled by the Court of

Appeals of Maryland. *See Rivas v. Oxon Hill Joint Venture*, 130 Md.App. 101, 112 (2000) (*citing Murray* for the proposition that "[t]he landlord's duty to exercise reasonable care to keep common areas safe extends not only to his tenants but also to his tenants' guests."). Its facts are sufficiently similar to Plaintiff's allegations. Ryman's appeal to ISA's answer to Plaintiff's interrogatories where ISA states that "the trailer was not open to the public," (ECF No. 22, at 7), is unavailing given that – like in *Murray* – there is no allegation that Plaintiff was aware of the access restriction.

Ryman also argues that Plaintiff failed to plead that Ryman had a contractual duty to set up or maintain the trailer. Instead, the Agreement provides that Ryman was responsible merely for providing ISA with a space to utilize as a temporary office. The relevant section governing Ryman's obligation to provides:

> [t]emporary office quarters of minimum total dimension of 200 square feet for use by ISA. Said quarters, whether of a temporary or permanent nature, to be a climate controlled office environment divided into two offices or cubicles with access to power, two telephone lines, broadband internet connection (high speed cable/isdn or equivalent type). ISA access to temporary office quarters to be for the period of time from arrival of the first ISA personnel at the Site (mid-September) through full strike and clean-up of the Cold Room (mid-January).

(ECF No. 19-1 § 5(r)).   Plaintiff contends that Ryman was still responsible for providing office space which, under principles of negligence, includes providing space free of known or reasonably known dangerous conditions, such as a lack of stairs from an elevated door to the ground.   Plaintiff has stated a plausible claim of negligence even accepting the existence of the contract.   Her proposed amended complaint is not futile and will be accepted.

### B.   Motion to Dismiss for Improper Venue

Ryman moves to dismiss ISA's third-party complaint against it for improper venue pursuant to Fed.R.Civ.P. 12(b)(3).   It argues that that the Agreement contains a forum selection clause that governs this dispute and points away from this district. The relevant clause states:

> Governing Law.   This Agreement is made and
> shall be governed in all respects, including
> validity, interpretation and effect, by the
> laws of the State of Tennessee, United
> States of America, without recourse to its
> conflict of laws principles.   Any legal
> action or proceeding with respect to this
> Agreement shall be brought exclusively in
> the courts located in Davidson County in the
> State of Tennessee, United States of
> America, and by execution and delivery of
> this Agreement, [Ryman] and ISA hereby
> accepts for itself and in respect of its
> property, generally and unconditionally, the
> jurisdiction of the aforesaid courts.
> [Ryman] and ISA hereby irrevocabl[y] waive,
> in connection with any such action or
> proceeding, any objection, including,
> without limitation, any objection to the

12

> laying of venue or based on the grounds of
> forum non convenes, which it may now or
> hereafter have to the bringing of any such
> action or proceeding in such respective
> jurisdictions.

(ECF No. 19-1 § 23(f)).

When its brief was filed, Ryman was correct that in this circuit, a motion to dismiss based on a contractual forum selection clause is properly analyzed as a motion to dismiss for improper venue pursuant to Rule 12(b)(3). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). Since briefing has concluded, however, the Supreme Court of the United States has held that a party may not enforce a valid forum-selection clause through dismissal pursuant to either 28 U.S.C. § 1406(a) or Rule 12(b)(3). *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S.Ct. 568, 577 (2013). The Court wrote that Section 1406(a) and Rule 12(b)(3) only permit dismissal when venue is, respectively, "wrong" or "improper." "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id*. Whether venue is proper is generally governed by 28 U.S.C. § 1391 which provides that:

> [a] civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Based on the complaint, a substantial part of the events that give rise to ISA's third-party complaint occurred at National Harbor, located in Prince George's County, within this judicial district. Therefore, venue is proper under 28 U.S.C. § 1391(b)(2) and Ryman's motion will be denied.[3]

---

[3] The Court held that the valid method of enforcing a forum-selection clause is *via* a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Atl. Marine*, 134 S.Ct. at 579. Ryman did not move to transfer the action and, as an initial matter, the scant case law that exists has been inconsistent on the issue of whether a third-party may move for transfer of venue under Section 1404(a). *Compare Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 209-10 (5th Cir. 1996) ("[S]tatutory venue limitations have no application to Rule 14 claims even if they would require the third-party action to be heard in another district had it been brought as an independent action." (*quoting* 6 Charles Alan Wright, et al., Federal Practice & Procedure § 1445 (2[d] ed. 1990))) *with One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F.Supp.2d 824, 828-29 (E.D.Va. 2004) ("While it is true, under the doctrine of ancillary venue, that third-party defendants have no standing to raise a defense that venue is improper, any party, and even the court *sua sponte*, can move for transfer of an action under 28

**C.   Motion to Dismiss for Failure to State a Claim**

**1.   Standard of Review**

Ryman argues in the alternative that ISA's third-party complaint against it should be dismissed for failure to state a claim.   The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.   *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."   *Bell Atl.*, 550 U.S. at 555 n.3.   That showing must consist of more than "a

---

U.S.C. § 1404(a), because a motion for transfer is not a defense that venue is improper.") *and Stronghold Sec. LLC v. SecTek, Inc.*, 582 F.Supp.2d 726, 728 (D.Md. 2008) (citing *One Beacon*). Even if a third-party such as Ryman had standing to seek to transfer venue, it would be improper to construe its motion as a motion to transfer pursuant to Section 1404(a) because of the general rule that a court acting under Section 1404(a) may only transfer the entire civil action, not individual claims. *See, e.g., One Beacon*, 312 F.Supp.2d at 828 (*citing Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991)); *accord TechnoSteel, LLC v. Beers Constr. Co.*, 271 F.3d 151, 157 (4th Cir. 2001) (acknowledging that "courts have adhered to the general rule that a § 1404(a) transfer 'contemplates a plenary transfer of the entire case.'" (*quoting Chrysler*, 928 F.2d at 1518)); *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516 (8th Cir. 1985) (Section 1404(a) "contemplates a plenary transfer"); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (same); *Stronghold Security*, 582 F.Supp.2d at 728 (D.Md. 2008).   Because such a motion has not been filed and Plaintiff has not had an opportunity to provide her position, it is improper to proceed with a motion to transfer presently.

formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## 2. Analysis

ISA brings three claims against Ryman: (1) Common Law Indemnification; (2) Contribution; and (3) Contractual Indemnity. Ryman contends that ISA has failed to state a claim for all three.

ISA's first claim is for "Common Law Indemnity." A claim for indemnity may arise from three circumstances: (1) express

contractual indemnity; (2) indemnity implied by fact, as from a special relationship or course of conduct; and (3) indemnity implied by law, or tort indemnity, grounded in the concepts of restitution and unjust enrichment. *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 381-83 (2008). Ryman assumes that ISA's "Common Law Indemnity" claim is a claim of tort indemnity, and ISA does not dispel this view.

"In order to successfully claim that [Ryman] is liable to [ISA] for contribution and/or indemnity, appellants must have alleged that [Ryman] ha[s] original tort liability to plaintiffs in the [u]nderlying [s]uit." *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md.App. 698, 706 (2002). Ryman's first argument is that ISA's third-party complaint is devoid of sufficient factual allegations to state a claim for tort indemnity. The third-party complaint alleges that pursuant to the Agreement, Ryman was responsible for providing a temporary office. The trailer served as that temporary office and was leased by Ryman and located on Ryman's properties. Ryman supervised the delivery and set-up and was responsible for all issues and maintenance of the trailer. ISA incorporates by reference Plaintiff's allegations in her complaint and alleges that if ISA should be found liable to Plaintiff for damages, then it is the result of the tortious acts of Ryman and the tortious acts of ISA, if any, are passive or secondary to

17

Ryman's tortious acts.   (ECF No. 17 ¶¶ 6-10, 15, 17).   A plausible reading of the allegations according to ISA – incorporating the allegations made by Plaintiff – is that it was Ryman that was responsible for the hazardous trailer that led to Plaintiff's injuries.

For tort indemnity in Maryland, "a defendant may seek indemnification only when its liability is passive or secondary, which liability is rooted in the concept of imputed or constructive fault." *Pyramid Condo. Ass'n v. Morgan*, 606 F.Supp. 592, 596 (D.Md. 1985).   In determining whether negligence is active or passive, courts typically look to the allegations in the plaintiff's complaint against the party seeking to implead the third-party defendant.   "If the alleged conduct attributed to the third-party plaintiff is active negligence, or if it is clear from the complaint that the third-party plaintiff's negligence would only arise from proof of active negligence, then there is no valid claim for indemnity." *Richards v. Freeman,* 179 F.Supp.2d 556, 560 (D.Md. 2002) (*citing Kelly v. Fullwood Foods, Inc.,* 111 F.Supp.2d 712, 714 (D.Md.2000); *Pyramid Condominium,* 606 F.Supp. at 596).

Plaintiff's amended complaint[4] alleges that ISA created a dangerous condition by failing to have stairs from the elevated

---

[4] The third-party complaint was filed before Plaintiff filed its proposed amended complaint.   The original complaint made no

door; knew or should have known of the hazardous condition; failed to provide warning of that dangerous condition; and that it was ISA's employee – Mr. Meader – who instructed Plaintiff to exit through a door of the elevated trailer that did not have stairs.  Plaintiff alleges that Ryman provided the trailer, and was responsible for its maintenance, and therefore was negligent by failing to have stairs leading from the door and providing any warnings.  Plaintiff has alleged active negligence on the part of both ISA and Ryman.  The issue at bottom is whether there is a plausible scenario where ISA's negligence is merely passive, thereby opening up tort indemnification as a potential remedy.  *See Bd. of Trs. of Balt. Cnty. Cmty. Coll. v. RTKL Assocs., Inc.*, 80 Md.App. 45, 56-57 (1989) (third-party plaintiff cannot seek indemnity if it cannot possibly be held liable under any passive negligence theory).  Here, if the fact-finder were ultimately to determine that Plaintiff's damages were solely attributable to Ryman's failure to provide a trailer free from hazardous conditions, it might also find that ISA's

---

mention of Ryman and its alleged negligence.  Normally, a court evaluating a claim of tort indemnity would look to the allegations in the operative complaint when the third-party complaint was filed to determine whether the defendant was an active or passive tortfeasor.  Because it seems apparent that Plaintiff only learned of the relationship between Ryman and ISA from ISA's third-party complaint, the court will look to the amended complaint (which, as discussed above, will become the operative complaint) to evaluate whether a claim of tort indemnification has been made.

failure to discover or remedy these conditions constituted passive negligence. *See Pyramid*, 606 F.Supp. at 596 (a right to indemnity exists "where the indemnitee's negligence is based upon a failure to inspect and thereby discover a defect in an article manufactured by the indemnitor."); *Max's of Camden Yards v. A.C. Beverage*, 172 Md.App. 139, 148 (2006) ("Frequently occurring situations in which a right to implied indemnity between tortfeasors has been recognized include a tortfeasor liable . . . for failing to discover a defect in a chattel supplied by another, for failing to discover a defect in work performed by another, and for failing to discover a dangerous condition on land created by another."). Consequently, it is not appropriate to dismiss ISA's claim of tort indemnity.

ISA's second claim against Ryman is for contribution. Under Maryland's Uniform Contribution Among Tort-Feasors Act ("UCATA"), a defendant may seek contribution from a joint tortfeasor where "two or more persons [are] jointly or severally liable in tort for the same injury to a person or property, whether or not judgment has been recovered against all or some of them." Md. Code Ann., Cts. & Jud. Proc. § 3-1401(c). "Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Parler & Wobber*

*v. Miles & Stockbridge,* 359 Md. 671, 687 (2000) (citation omitted).

Ryman argues that ISA has failed to state a claim for contribution because, under the UCATA, the third-party plaintiff must allege that the third-party defendant has "original tort liability to plaintiffs in the underlying suit." *Heritage Harbour*, 143 Md.App. at 706. But ISA's contribution claim incorporates by reference all of its prior allegations (ECF No. 17 ¶ 18), including those that allege that Plaintiff's injuries are the result of Ryman's tortious acts and any tortious acts of ISA are passive. If ISA proves that Ryman was negligent by failing to provide a safe trailer, it is plausible that Ryman's negligence caused, at least in part, Plaintiff's injuries. *See Certain Underwriters at Lloyd's London v. R.J. Wilson & Assocs., Ltd.*, No. CCB-11-1809, 2013 WL 3224999, at *4 (D.Md. June 25, 2013). Thus, ISA has stated a claim for contribution.

ISA's third and final claim is for contractual indemnification. Tennessee law – the law governing the agreement (ECF No. 19-1 § 23(f)) – recognizes that an obligation to indemnify may arise expressly by contract. "For indemnification to arise expressly by contract, 'there must be a clear and unequivocal expression of an intention to indemnify.'" *AutoZone, Inc. v. Glidden Co.*, 737 F.Supp.2d 936, 944 (W.D.Tenn. 2010) (*quoting First Am. Bank of Nashville, N.A. v. Woods*, 734

S.W.2d 622, 632 (Tenn.Ct.App. 1987).   Ryman argues that the indemnification clause - as recounted above – only comes into play when ISA incurs damages as a result of Ryman's breach of its duties, obligations, representations, or warranties under the Agreement.   The Agreement's clause concerning the trailer, however, only obliges Ryman to provide ISA space to use as an office, with no responsibility to handle any maintenance or upkeep.   This argument will be rejected.   Ryman's contractual responsibility in regard to the trailer implied that Ryman would not only provide office space, but provide office space that was free of hazardous conditions, such as an elevated door without stairs to the ground.   ISA's claim of contractual indemnity can proceed.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion to amend her complaint is granted and Third Party Defendant's motion to dismiss will be denied.   A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
